STATE INSURANCE FUND, Plaintiff and Appellee, *v.* ÁNGEL PEÑA PLAZA and THELMA BERDIEL PEÑA, Defendants and Appellants.

No. R-70-283.     Decided April 26, 1972.

*Vicente Pérez Díaz* for appellants. Appellee's counsel did not appear.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellants signed a promissory note to the order of Housing Investment Corporation,[1] hereinafter referred to as Housing, in the amount of $11,550. It drew interest at the rate of 6% annually on the unpaid balance. It was payable in monthly installments of capital and interest of $74.50 each commencing on the first day of May 1967 and ending on the first day of April 1992. It was secured by first mortgage on Lot No. 20, and a dwelling house at Algeria Street of Puerto Nuevo Development. The said promissory note provides that in the event the default in the payment of a monthly installment upon maturity is not cured by its payment prior to the due date of the next such installment, the entire amount of the obligation and accrued interest shall become payable without any notice, at the option of the holder who may demand its payment; that the failure to exercise this optional right shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. This promissory note was endorsed without recourse by Housing to the appel-

---

[1] The Housing endorsed the promissory note in favor of appellee, State Insurance Fund.

lee, the former becoming appellee's collection agent as a result of which it offers "collection services and takes steps for payment of the obligation."

The evidence adduced was the following:

(1) The record of previous monthly installments paid by appellants shows that payments were not made on the first day of each month but several days later; that they were always made before the date on which the next monthly installment fell due with the exception of that for the first of July 1967 whose payment was accepted on August 28, 1967 together with the monthly installment for this last month.

(2) The Housing collection manager testified that appellants did not pay the monthly installments that fell due the first day of the months of March and April 1969; that on the 2d of said month of April he met with several employees to decide which cases were to be declared due; that they took into consideration the appellants' aforesaid record of payments which showed that they had violated their contract on seven previous occasions; that as of March 1969 the unpaid balance of the principal of the promissory note in question was the sum of $11,161.51; that in view of appellants' nonfulfillment record, that there was no communication from them despite the steps taken for collection, they proceeded to declare the debt due; that they continued taking steps for the collection ". . . to see if we had any answer from him regarding this obligation. There was no answer whatsoever"; that Mr. Peña was invited by letter to visit the office to discuss his case but he did not show up; that then they proceeded to recommend the case for mortgage foreclosure. He admitted that a check drawn by Mr. Peña in favor of Housing on April 24, 1969, "for $206.04 was in our office"; (this check covered the installments for March and April 1969 plus specific surcharges); that two checks for $103.02 each and one for $25 drawn by Mr. Peña in favor of Housing on June 3, 1969,

plus another one "dated July 19, 1969, in the amount of $103.02," were received. All these checks, except the last one, were certified on June 20, 1969, once they were returned to appellants. The said manager testified that " . . . Inasmuch as the debt was declared due since April 2, . . \. [1969] the remittances were not accepted"; that the check for $206.04 was returned by the first or the second day of May 1969.

The debtor Mr. Peña, admitted that he had been in arrears for two months; that then Housing sent him "a letter requesting payment of the monthly installments overdue and $25 for attorney's fees on account of the delay," amount which he forwarded; that the checks were "returned to me with a letter notifying me that they had decided to foreclose the total sum"; that ". . . I had been in arrears on other occasions for two months more or less and I had paid the two months with the corresponding surcharges and I did not believe this was going to happen this time no, and that was when I was notified that there was a mortgage foreclosure pending and, this, naturally at the end of April"; that ". . . It was not because I did not have the money. I used to get in arrears and then I would pay two months." He testified that he did not visit the offices of Housing; that he went to see his own attorney who got in touch with Housing where it was confirmed that they had decided to foreclose the mortgage; that then he drew a check on January 17, 1970, for $404 to cover four monthly installments after the foreclosure proceeding had been filed. Lastly he testified that he does not live in but rents out the property object of the foreclosure proceeding.

The court concluded that appellants did not pay the monthly installment for April 1969 in due time. By virtue thereof it ordered them to pay to appellee $11,161.51 of principal plus interest at the rate of 6% from February 1969 until date of full payment, plus $25.50 due monthly from March 1, 1969, to date of full payment for property tax

purposes, insurance premiums, F.H.A. premiums, and for services and surcharges in the servicing of the loan, plus the sum of $1,155 for costs, attorney's fees, and expenses. In the case of failure to effect payment among other things, it ordered the marshal to sell the property at public auction to satisfy with the proceeds of said sale the payment of said claim.

Appellants allege that:

■ 1.—Upon accepting the payments of April 24, 1969, plus one for $25 which were not returned until June 11, 1969, appellee waived any default by the appellants. We do not agree. We did not decide a question like this in *Housing Inv. Corp.* v. *Sosa*, 98 P.R.R. 240 (1970). Besides, the circumstances are quite different in this case since the record shows that the return was made with reasonable promptness, the first or the second day of May 1969 and not on the following June 11, when the checks for $103.02 signed and forwarded to appellee a few days prior to this last date, were returned.

2–3.—Appellants paid the surcharges required within the payments they made through the checks previously described, payments which they made on April 24, 1969, before the whole amount owed was declared due by the complaint filed on June 13, 1970. This assignment lacks merit. The evidence shows that appellants did not pay the monthly installment for March in April as required by the promissory note. When they forwarded the payment on April 24, 1969, they had already incurred default which permitted appellee to exercise, as it did, the option provided in the promissory note to the effect that in that case the holder could demand full payment of the principal of said obligation. This option was exercised according to the uncontroverted testimony of the manager of Housing after the latter exhausted reasonable efforts for the appellant to cure the default in payment.

4.—The trial court erred in not applying to this case the decision in *Housing Inv. Corp.* v. *Sosa, supra; Housing Inv. Corp.* v. *Benés,* judgment of June 16, 1970; *Seamen's Bank* v. *Heirs of Sepúlveda,* 99 P.R.R. 274 (1970). This assignment is untenable inasmuch as the circumstances in this case, previously described, established in the hearing of the case on the merits, did not justify the application to the same of any rule whatsoever drawn up in the cited cases in which the availability of a summary judgment was involved.

5.—It constituted error to grant the complaint for foreclosure of the mortgage without the mortgage having been recorded in appellee's favor as assignee of said obligation.

■ In *Sec. of the Treasury* v. *Superior Court,* 95 P.R.R. 424 (1967), concerning the assignment of a mortgage note issued to the order of a determined person, we said that the mortgage recorded to secure same subsisted in full force and effect notwithstanding the fact that the mortgaged property had been attached months before the promissory note was endorsed by its drawer to the order of the assignee; that mortgages constituted to guarantee obligations negotiable by means of endorsements, like the one in the case at bar, are authorized by Art. 153 of the Mortgage Law (30 L.P.R.A. § 266). Said article specifically provides that in these cases of assignment ". . . it shall be understood that the latter is transferred together with the obligation or with the deed, *it being unnecessary to give notice thereof to the debtor, or to record the transfer in the Registry.*" (Italics ours.)

The cases cited by appellant are not applicable since they refer to the need for (1) the recording of the mortgage itself; (2) the recording of its assignment and not of the obligations negotiable by endorsement secured with a mortgage; and to (3) the submortgage—Arts. 146 and 152, Mortgage Law—(30 L.P.R.A. §§ 259, 265); *Schroder* v. *Registrar,* 84 P.R.R. 324, 327 (1962). In the case at bar none of these circumstances is involved.

■ 6.—It is alleged, without argumenting and without citing the law supporting the assertion, that the Federal Housing Administration, which for having insured the loan was an interested party in this action, was not included in the same. We do not agree. Nothing is provided in the National Housing Act (12 U.S.C.A. §§ 1709–1710) nor in our legislation to support this contention.

7.—The order to pay $1,155 "for costs, expenses and attorney's fees secured by mortgage" was erroneous. He is right. The note in question is drafted in English and in Spanish, line by line, as is commonly done in this type of transaction. There exists, nevertheless, a complete lack of agreement between both texts as to the obligation to pay court expenses, disbursements, and attorney's fees in case recourse to the courts becomes necessary in order to collect the whole or a portion of the amount of the promissory note. While the English text provides that "the subscriber agrees to pay the court expenses, disbursements, and attorney's fees *which may be incurred in the amount of ONE THOUSAND ONE ($1,155.00),*" the Spanish text reads thus "*el subscribiente se obliga a satisfacer todas las costas y honorarios de abogado en que se incurra por el acreedor hasta la suma de HUN- DRED FIFTY–FIVE–Dólares ($_____).*" (Italics ours.)

It is evident, in the first place that when the promissory note was drafted in English and in Spanish, line by line, enough blank space was not left to enter in the amount agreed upon as to costs and attorney's fees in both languages, therefore it was only entered in the English language. Appellant did not complain about this and he did not question that the maximum amount agreed upon was $1,155.

Nevertheless, appellant assigns that he agreed to pay only the amount incurred on account of costs and attorney's fees up to the sum of $1,155 as it clearly appears in the Spanish text of the promissory note.

■ Since the promissory note appears printed with just some blank spaces to be typewritten, it is evident that it was supplied and imposed by Housing. Therefore the construction of the provisions as to costs and attorney's fees in which an apparent discrepancy arises between both texts, should favor the debtor in this case. Section 1240 of the Civil Code, 31 L.P.R.A. § 3478; *Prieto* v. *Hull Dobbs Co.*, 88 P.R.R. 407 (1963); *Zequeira* v. *U.R.H.C.*, 83 P.R.R. 847 (1961). To these effects we must try to adjust, if possible, the English text to the Spanish text.

■ To conclude, as we do, that the English text in question in effect means the same as the Spanish text of the provision in question, that is, that appellant only agreed to pay the costs and attorney's fees incurred up to the amount of $1,155, does not constitute a forced construction in disagreement with the English terms of the provision. In the English text it is provided for the payment of costs and fees "which may be incurred", that is, that *"puedan incurrirse"*, so that when then it stipulates "in the amount of $1,155" it is logical and reasonable to conclude that it was sought to give to this phrase the meaning that it was a maximum or limit to said obligation, that is to say, that it was assumed *up to* that amount, as the Spanish text reads.

In view of the foregoing, the case must be remanded to the trial court for it to determine, after a hearing is held, the amount really incurred by the appellee on account of costs and attorney's fees. In these particulars the judgment must be modified and thus modified it will be affirmed.

Mr. Chief Justice Negrón Fernández took no part in this decision.